Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SYMRISE, INC.,** | |
| **Plaintiff,** | **Civil Action No.: 22-7299 (ES) (JRA)** |
| **v.** | **OPINION** |
| **DEBORAH KENNISON** *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Plaintiff Symrise, Inc., ("Plaintiff" or "Symrise"), filed suit against Defendants Doehler North America, Inc., ("Doehler"), Paul Graham ("Graham"), Deborah Kennison ("Kennison"), and Ahmed Ali, also identified as Ahmed Nour ("Nour") (collectively "Defendants"), alleging (i) a violation of the Defend Trade Secrets Act (18 U.S.C. § 1836) (Count I); (ii) a violation of N.J.S.A. 56:15-1, *et seq.* (Count II); (iii) Common-Law Trade Secret Misappropriation (Count III); (iv) Common-Law Unfair Competition (Count IV); (v) Breach of Contract against Defendant Graham (Count V) and Nour (Count VII); (vi) Tortious Interference with Contract against Defendant Doehler (Count VI) and Graham (Count VIII); (vii) Breach of Fiduciary Duty against Kennison (Count IX) and Nour (Count X); (viii) Aiding and Abetting Breach of Fiduciary Duty against Doehler and Graham (Count XI); and (ix) Fraudulent Concealment against Kennison and Nour (Count XII). (D.E. No. 27 ("Amended Complaint" or "Am. Compl.")). Currently before the Court is Graham and Nour's Motion to Compel Arbitration. (D.E. No. 77 ("Motion")). Likewise before the Court is all of the Defendants' request to stay the action. (*Id.*). Having considered the Parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P.

78(b); L. Civ. R. 78.1(b).  For the reasons set forth herein, the Motion is **DENIED**.

## I.    BACKGROUND

### A.    Factual Background

According to the Amended Complaint, Plaintiff is a "global developer of flavor and fragrance ingredients, which [it] sells to customers who incorporate those flavors into various finished products, including foods, beverages, perfumes, and numerous other items." (Am. Compl. ¶ 2).  Plaintiff also alleges that "[i]n conducting its business, Symrise makes use of numerous proprietary trade secrets, which Symrise has developed and acquired over many years, through enormous amounts of research, and at great expense." (*Id.* ¶ 21).  The Amended Complaint states that "Symrise derives independent economic value from the secrecy of this information, which, if misappropriated, would allow competitors to free-ride off of Symrise's research, investment, and experience and to provide Symrise's customers with products that, in many cases, Symrise developed specifically for those customers through its own original research." (*Id.*).

According to the Amended Complaint, Defendant Doehler is also "a global producer of ingredients for use in other companies' finished products." (*Id.* ¶ 2).  Plaintiff alleges that "rather than organically developing its own place in the North American beverage market through genuine competition and on its own merits, and competing legally and fairly in the markets where it already had a presence, Doehler instead orchestrated a scheme to steal Symrise's confidential and proprietary information, in an attempt to freeride off of Symrise's decades of efforts and proven success and amass for itself an undeserved share of the market." (*Id.* ¶ 3).  As part of this alleged scheme, Plaintiff alleges that its former executives, including Defendants Graham, Nour, and Kennison, purportedly "absconded to [] Doehler, having harvested and stolen vast amounts of Plaintiff's intellectual property" (*Id.* ¶ 1), even though those employees had made contractual

commitments not to disclose Symrise's confidential information.  (*Id.*¶¶ 6 & 7).

Specifically, Plaintiff alleges that Defendant Graham was employed by Plaintiff from December 2013 until September 3, 2021, where he served as the President of the Flavor Business towards the end of his tenure.  (*Id.* ¶ 47).  When Graham began working for Plaintiff, Plaintiff and Graham entered into an employment agreement dated December 24, 2013, wherein Graham agreed, among other things, that "[d]uring and after [his] employment with [Symrise], [he would] not disclose or appropriate any [of Symrise's confidential information] for [his] own use or for the use of others" and would not for one year immediately following the termination of his employment with Symrise "directly or indirectly, solicit for employment or hire, or attempt to solicit for employment or hire, any employee of [Symrise], nor . . . encourage any employee of [Symrise] to terminate employment with [Symrise]."  (*Id.* ¶ 47; *see also* D.E. No. 27-1, Ex. A ("Graham's Employment Agreement") to Am. Compl.).  In September 2021, Graham and Plaintiff entered into a Confidential Separation Agreement and General Release, which provided that "this Agreement does not cancel or otherwise diminish Graham's post-employment obligations . . . relating to confidentiality . . . and Non-Solicitation of customers and or employees as outlined in the [Graham Employment Agreement]."  (Am. Compl. ¶ 48; D.E. No. 27-2, Ex. B ("Graham's Separation Agreement") to Am. Compl.).  Plaintiff alleges that, notwithstanding these contractual commitments, Graham immediately began to solicit Symrise employees after leaving Symrise and "wrongfully poached Symrise's account director for The Coca-Cola Company, who was in that role for seven years."  (Am. Compl. ¶¶ 5 & 49–50).  Further, Plaintiff alleges that in February 2022, Graham and Doehler wrongfully solicited and hired Symrise's director of strategic purchasing.  (*Id.* ¶ 5).  Moreover, Plaintiff claims that "[b]y June 2022, Doehler and Graham broadened their planned attack on Symrise by soliciting Defendant Nour, who had been with

Symrise for six years, and who was then Senior Director of Symrise's Beverage Business Unit. Nour secretly accepted a position with Doehler on June 21, 2022, but did not resign from Symrise until September 7, 2022." (*Id.* ¶ 6). Plaintiff contends that Nour delayed his resignation "to conceal Graham's violation of his non-solicitation obligation (which ended four days before Nour's resignation), and to allow Doehler to avoid (and have Symrise continue) paying Nour during the summer of 2022, while Nour was secretly serving Doehler's interests." (*Id.*).

Relatedly, Plaintiff claims Defendant Nour began working for Plaintiff in 2016 and resigned from his position as the Senior Director of the Beverage Unit on September 7, 2022. (*Id.* ¶ 54). Plaintiff also alleges that "Nour signed a valid and enforceable agreement with Symrise on December 13, 2014." (*Id.* ¶ 120). According to the Amended Complaint, "[t]hrough his role as a Senior Director at Symrise, Nour had knowledge of and access to some of Symrise's most highly confidential information." (*Id.* ¶ 54). Plaintiff alleges that "[o]n June 21, 2022, Nour accepted a job at Doehler as Vice President of its Beverage Unit." (*Id.* ¶ 55). However, Nour allegedly did not inform Symrise that he accepted a job at a competitor until he resigned from Symrise on September 7, 2022. (*Id.*). According to the Amended Complaint, "Nour coordinated with co-Defendants Graham and Doehler to delay his resignation in an attempt to conceal Graham's violation of his non-solicitation obligation (which ended four days before Nour's resignation), and to allow Doehler to avoid (and have Symrise continue) paying Nour during the summer of 2022, while Nour was secretly serving Doehler's interests, including by illegally gathering Symrise's propriety information." (*Id.*). During this period, after having secretly accepted a job at Doehler, Plaintiff alleges that "Nour also continued to participate in highly confidential, senior-level meetings in which the heads of Symrise's business units discussed detailed short- and long-term business plans, including forthcoming capital investments and strategies for pursuing specific

4

customers." (*Id.*).  Further, Plaintiff alleges that "on July 28, 2022, Nour sent Symrise's confidential and propriety information, including business plans for upcoming product launches, to his personal email address, in violation of Symrise policies and procedures and having already secretly accepted employment at Doehler." (*Id.* ¶ 56).

Plaintiff also alleges that Defendant Kennison began working for Plaintiff in 2005 and on October 3, 2022, Defendant Kennison resigned from her position with Plaintiff as Vice President in Charge of Flavor Innovation. (*Id.* ¶ 59).  Two months before Kennison resigned from Symrise, on or about August 3, 2022, Plaintiff alleges that "she exchanged drafts of a press release with Doehler, which described a new innovation laboratory Doehler was planning to open in New Jersey." (*Id.* ¶ 60).  And the following month, on September 15, 2022, Kennison allegedly "e-mailed Symrise's confidential and proprietary information to her personal e-mail address, including an itemized list of Symrise's laboratory equipment—with exact model numbers and specifications—that would be necessary to build out a new fully equipped laboratory." (*Id.*).  Plaintiff claims that on November 1, 2022, shortly after Kennison officially joined Doehler, Doehler announced that it was opening a new such laboratory in North Brunswick, New Jersey. (*Id.*).

Notwithstanding their employment with Symrise, Plaintiff alleges that, together, "[d]uring the summer of 2022, Defendants Kennison and Nour collectively stole more than 1,000 Symrise documents and files, containing hundreds of Symrise trade secrets, including flavor formulas, applications formulas, sensitive financial and customer data, and critical information on Symrise operating procedures." (*Id.* ¶ 53).  Additionally, Plaintiff contends that "Kennison and Nour carried out this theft after having accepted employment at Doehler, while in regular communication with Doehler, and with the intent of using Symrise's trade secrets in their

employment at, and for the benefit of, Doehler." (*Id.*).

Plaintiff, therefore, asserts that as a result of Defendants Graham, Nour, and Kennison's conduct, mainly their alleged "misuse and exploit[ation] of the wide-ranging trade secrets they stole from Symrise. . . Doehler now has the means to unfairly compete with Symrise on every level, whether it be freeriding off of Symrise's propriety technical information to open a laboratory and develop flavors, or leveraging Symrise's extensive customer-specific data to raid Symrise's business." (*Id.* ¶ 9).

### B.   Procedural History

On December 15, 2022, Plaintiff filed the Complaint against Defendants Kennison and Nour to prevent Kennison and Nour from utilizing Plaintiff's confidential information and trade secrets after the termination of their employment.  (D.E. No. 1 ("Complaint" or "Compl.")) ¶ 1). The Complaint asserted the following counts: (i) violation of the Defend Trade Secrets Act (18 U.S.C. § 1836) against Kennison (Count I) and Nour (Count II); (ii)  violation of N.J.S.A. 56:15-1, *et seq*. against Kennison (Count III); (iii) Common-Law Trade Secret Misappropriation against Kennison and Nour (Count IV); (iv) Common-Law Unfair Competition against Kennison and Nour (Count V); (v) Breach of Contract against Nour (Count VI); (vi) Breach of Fiduciary Duty against Kennison (Count VII) and Nour (Count VIII); (vii) violation of Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030 against Kennison and Nour (Count IX); (viii) Fraud against Kennison (Count X) and Nour (Count XI); and (ix) Fraudulent Concealment against Kennison and Nour (Count XII).  (Compl.).  On January 25, 2023, Plaintiff filed a Motion for a Preliminary Injunction (D.E. No. 14), followed by a Motion for Expedited Discovery.  (D.E. No. 15).  On February 6, 2023, Kennison and Nour, moved to dismiss Count IX, Count X, Count XI, and Count XII of the Complaint, for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6).  (D.E. No. 17).  Additionally, Kennison and Nour also alleged that Plaintiff failed to properly plead fraud with particularity under Federal Rule of Civil Procedure 9(b) as it relates to Counts X, XI, and XII of the Complaint.  (*Id.*).

On February 9, 2023, Plaintiff and Defendants Kennison and Nour, filed a Joint Motion for Preliminary Injunction, agreeing that Kennison and Nour may not access or disclose Plaintiff's confidential information.  (D.E. No. 19-1).  On February 21, 2023, the Court granted the Joint Motion for Preliminary Injunction.  (D.E. No. 22).

On February 27, 2023, Plaintiff filed an Amended Complaint adding Doehler and Graham as Defendants in this action.  (Am. Compl. ¶ 1).  Because Plaintiff filed an Amended Complaint, the Court denied Kennison and Nour's motion to dismiss the Complaint as moot.  (D.E. No. 32).  On March 23, 2023, Kennison and Doehler separately filed their Answers to the Amended Complaint.  (D.E. Nos. 38 & 39).  Doehler filed Counterclaims against Plaintiff with its Answer.  (D.E. No. 39).

On November 6, 2023, Graham and Nour filed a Motion to Compel Arbitration urging the Court to enter "an Order compelling Plaintiff [] to arbitrate the claims against Graham and Nour in accordance with the terms of the [P]arties' contracts"[1]  (D.E. No. 77).  Further, all Defendants request that this matter be stayed pending arbitration of any claims asserted against Graham and Nour.  The Motion is fully briefed.  (D.E. No. 40-1 ("Mov. Br."); D.E. No. 43 ("Opposition" or "Opp. Br.")), (D.E. No. 44 ("Reply")).

---

[1]     Defendants originally filed the motion to compel arbitration on March 23, 2023.  Nevertheless, on September 14, 2023, the Honorable Jose R. Almonte, U.S.M.J. referred the Parties to mediation and administratively terminated the motion.  (D.E. No. 67).  After mediation was unsuccessful Defendants renewed their motion to compel arbitration.

## II.    LEGAL STANDARD

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'"  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).  A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.  By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [they] do so."  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999).  The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'"  *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).  "When the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 775 n.5 (3d Cir. 2013) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 112 (3d Cir. 2000)).  Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

A court's determination regarding whether the parties agreed to arbitrate is considered under "state-law principles that govern the formation of contracts," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), however, "'federal law applies to the interpretation of

arbitration agreements,' [therefore,] once a court has found that there is a valid agreement to arbitrate, regardless of whether the action is in a federal or a state court the determination of whether 'a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law.'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003)).

## III.    DISCUSSION

Here, Defendants Graham and Nour rely on different contractual agreements to assert arbitrability.  Accordingly, the Court addresses Graham and Nour's arguments in favor of arbitrability in turn.  For the reasons set forth below, the Court finds that, at this stage, arbitration is not warranted as against either Graham or Nour.

When a Court is asked to decide whether a valid arbitration agreement exists, it must first determine whether to use the Rule 12(b)(6) or Rule 56 standard of review.  *See Guidotti*, 716 F.3d at 776.  "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'"  *Id.*  (quoting *Somerset Consulting, LLC v. United Cap. Leaders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).  Further, even where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations.  *See e.g., CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014); *George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, No. 18-13243, 2019 WL 1233081, at *5

(D.N.J. Mar. 14, 2019).   For example, some courts in this Circuit have found an arbitration agreement to be incorporated by reference in a complaint where the underlying claims are based on agreements that contain the disputed arbitration provisions or where the complaint references an agreement that contains the arbitration provision.   *See CardioNet, Inc.*, 751 F.3d at 168 n.2.; *George*, 2019 WL 2591163, at *3.

The Third Circuit has provided that it is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard in two instances:  (i) if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or" (ii) "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776.   Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement."   *Id.* at 774 (citation omitted).   "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard."   *Id.* at 776; *see Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-21602, 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).

## A.      Defendant Paul Graham

In the Moving Brief, Graham argues that a valid arbitration agreement exists between Plaintiff and Graham because Graham's Employment Agreement allegedly "contains an unequivocal agreement to arbitrate 'any and all employment related claims.'"  (Mov. Br. at 6). More specifically, Graham points out that Graham's Employment Agreement, dated December 24, 2013, incorporated the following arbitration provision:

> 7.      **Agreement to Arbitrate Claims Relating to Employment.**
> The Employer and Employee mutually consent to the final resolution by binding arbitration of ***any and all employment related claims between them*** ("Claims").   Expressly excluded from this

10

Agreement are any claims Employee may have for workers' compensation benefits or unemployment compensation benefits. Also specifically excluded from this agreement are claims for declaratory relief or injunctive relief arising from alleged unfair competition, theft of trade secrets or business property, or the enforceability or breach of restrictive covenants. Nothing in this Section 7 is intended to limit Employee's right to file an administrative charge or otherwise seek relief from any administrative or governmental agencies such as the Equal Employment Opportunity Commission, the New Jersey Division on Civil Rights, or the National Labor Relations Board, but Employee does knowingly and voluntarily waive the right to seek recovery of money damages or injunctive relief against Employer, except as described above. Except with respect to Claims excluded in this paragraph, Claims shall be administered by JAMS and shall be governed by the JAMS Employment Arbitration Rules & Procedures ("Rules"). It is agreed by the parties that neither will pursue representative class or collective claims on behalf of other persons, including but not limited to current or former employees. It is further agreed that neither party will join or assert a claim in a class-action or collective-action lawsuit. The Arbitrator shall not have the authority to hear or issue any award concerning the claims of a class or collective action or to consolidate the claims of more than one employee or the claims of a class of employees into a single arbitration proceeding, to the maximum extent permitted by law. The Arbitrator has only the authority to resolve the Claims of, and award relief to, Employee individually. The Employer has the right to use this Agreement to defeat any attempt by Employee to file or join other employees in a class, collective, or joint action lawsuit or arbitration. **The parties hereto acknowledge that, by entering into this Agreement, they are waiving their rights to a judicial forum for the resolution of any covered Claims.**

(Graham's Employment Agreement ¶ 7 (emphasis added)). Because New Jersey courts have interpreted terms like "arising out of" and "relating to" broadly in the context of arbitration agreements, *KPH Healthcare Servs., Inc. v. Janssen Biotech, Inc.*, No. 20-05901, 2021 WL 4739601, at *3 (D.N.J. Oct. 12, 2021), Defendant Graham contends that the Court must broadly interpret "employment related claims," as set forth in Graham's Employment Agreement, to include "any dispute between the contracting parties that is connected in any way with [Graham's employment]." (Mov. Br. at 7 (citing *Curtis v. Cellco P'ship*, 413 N.J. Super. 26, 38 (App. Div.

2010))).  Accordingly, Defendant Graham contends that this case should be sent to arbitration based on Graham's Employment Agreement.  (*See* Mov. Br.).[2]

In Opposition, Plaintiff argues that arbitration is improper because, among other things, Graham's subsequent Separation Agreement, "waived the arbitration provisions from his Employment Agreement, along with all his previously-existing claims and rights as against Symrise, in return for a lucrative separation package—compensation that Graham explicitly represented was sufficient consideration for his releases."  (Opp. Br. at 20).  Specifically, Plaintiff notes that on September 3, 2021—with the alleged intent to amicably terminate the employment relationship between Plaintiff and Graham—Plaintiff and Graham entered into another agreement, Graham's Separation Agreement.  (Graham's Separation Agreement).  Upon signing Graham's Separation Agreement both Plaintiff and Graham agreed, among other things, that they "intend the terms and conditions of [Graham's Separation Agreement] to govern *all issues related to Graham's employment* and the termination of his employment with the Company."  (*Id.*; Graham's Separation Agreement).  Plaintiff also points out that at Paragraph 1(a) of the Separation Agreement, Graham "release[d], waive[d], and discharge[d] [Symrise] from each and every waivable claim, action *or right of any sort*" arising before the execution of the Separation Agreement, including those "relating in any way to his employment relationship [or] *the terms and conditions of that employment relationship*, or the termination of that employment relationship[.]" (Opp. Br. at 7; Graham's Separation Agreement ¶ 1(a) (emphasis added)).  Plaintiff and Graham

---

[2]    As stated above, the Third Circuit has provided that it is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard in two instances: (i) if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or" (ii) "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue."  *Guidotti*, 716 F.3d at 776.  Here, the Amended Complaint explicitly references Graham's Employment Agreement which contains the disputed arbitration provision.  (Am. Compl. ¶ 47).  And Plaintiff has not responded to Graham's Motion to Compel Arbitration with additional facts sufficient to place the agreement to arbitrate in issue.  As such, the Court can properly consider Graham's Motion to Compel Arbitration under Rule 12(b)(6) and without additional discovery.

also agreed that Graham's Separation Agreement would supersede all prior agreements and understandings as follows:

> 10.   <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement and understanding between the parties hereto and may be changed only with the written consent of both parties and only if both parties make express reference to this Agreement except for the Memo accompanying this agreement dated **April 15, 2021** which shall be incorporated by reference.  The parties have not relied on any oral statements that are not included in this Agreement.  ***This Agreement supersedes all prior agreements and understandings concerning the subject matter of this Agreement*** except for any agreement referenced in Paragraph 4[3] herein.  Any modifications to this Agreement must be in writing and Signed by Graham and an authorized employee or agent of this Company.

(Graham's Separation Agreement ¶ 10 (emphasis added)).  Plaintiff also notes that Graham's Separation Agreement "contains a New Jersey choice-of-law provision, but no arbitration provision."  (*Id.* at 21 (citation omitted)).  Therefore, Plaintiff contends that "by the plain, unmistakable terms of the Separation Agreement, Graham waived any rights under the arbitration provision in the Employment Agreement."  (*Id.* (citations omitted)).  For the reasons set forth below, the Court agrees with Plaintiff and finds that Graham's Motion—based on Graham's Employment Agreement—must be denied.

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement.  *See Century Indem. Co.*, 584 F.3d at 523 (3d Cir.

---

[3]    Paragraph 4 of Graham's Separation Agreement contains language that is relevant to the issues before the Court.  Specifically, Paragraph 4(a) provides that

> Graham understands that this Agreement does not cancel or otherwise diminish Graham's post-employment obligations under any agreement with Symrise (or any predecessor or affiliate of Symrise) respecting the obligations relating to confidentiality or the use of confidential information, disclosure and ownership of inventions and intellectual property, and No Business Diversion and Non-Solicitation of customers and or employees as outlined in the **Symrise Employment Agreement signed by Graham on 12/24/2013,** which are incorporated herein by reference.  <u>A copy of the Symrise Agreement is attached for your convenience.</u>

2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006). Under the first inquiry, the court must "apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017).[4] Per the second inquiry, courts are required to apply a "presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 288 (2010).

Pursuant to New Jersey law, "[a]n arbitration agreement is a contract and is subject, in general, to the legal rules governing the construction of contracts." *McKeeby v. Arthur*, 81 A.2d 1, 4 (N.J. 1951) (citations omitted). "[T]he duty to arbitrate . . . [is] dependent solely on the parties' agreement." *Cohen v. Allstate Ins. Co.*, 555 A.2d 21, 23 (N.J. Super. Ct. App. Div.), *certif. denied*, 536 A.2d 846 (N.J. 1989). "[A]n arbitration clause may be modified or superseded." *Wein v. Morris*, 944 A.2d 642, 648 (N.J. 2008). In New Jersey, a subsequent contract covering the same subject matter and involving the same parties, but containing inconsistent terms with a former contract, such that the two contracts cannot stand together, supersedes the former contract and becomes the only agreement of the parties on the subject matter. *Winans v. Asbury Park N.B. & T. Co.*, 13 N.J. Super. 577, 581 (Ch. Div. 1951). Courts should enforce contracts as the parties intended, based on the common intention of the parties. *Pacifico v. Pacifico*, 190 N.J. 258, 266 (2007). The language of the contract is considered "in the context of the circumstances at the time of the drafting and . . . appl[ies] a rational meaning in keeping with the 'expressed general

---

[4]     There is no dispute that New Jersey law governs Plaintiff's breach of contract claim *see Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 n.22 (3d Cir. 2013), because the Parties agree to its application (*see generally* Am. Compl. ¶¶ 99–104; Mov. Br. at 5). As such, when relevant, the Court applies New Jersey law in evaluating the Motion.

purpose.'"  *Id.* (quoting *Atl. N. Airlines, Inc. v. Schwimmer*, 12 N.J. 293, 302 (1953)).  When the parties do not agree to an essential term (often due to the term not being anticipated or being overlooked), the court may apply a reasonable term.  *Id.*  A subsequent agreement with no arbitration provision supersedes an arbitration provision in a prior agreement only if the subsequent agreement has an unambiguous, complete integration or merger clause.  *Rezac v. JMK Auto Sales, Inc.*, 2013 WL 1907739, at *4 (N.J. Super Ct. App. Div. May 9, 2013); *AllianceBernstein Invs., Inc. v. Eschert*, 2011 WL 1345026, at *6 (N.J. Super Ct. App. Div. Apr. 11, 2011).  Further, when "language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect."  *Basil Law Group v. Noah Bank*, 2022 WL 2132267, at *4-5 (N.J. Super. Ct. App. Div. June 14, 2022) (citing *Cypress Point Condo. Ass'n, Inc. v. Adria Towers L.L.C.,* 225 N.J. 403, 415 (2016)).  Agreements should "be read liberally to find arbitrability if reasonably possible." *Moreira Constr. Co. v. Wayne*, 98 N.J. Super. 570, 576 (App. Div. 1968).

Here, the Court finds that the arbitration agreement in Graham's Employment Agreement does not apply because it was superseded by Graham's Separation Agreement, which covered the same subject matter and same parties and did not contain any such arbitration provision.  Graham's Separation Agreement states that "the Company and Graham *intend* the terms and conditions of this Agreement to govern *all issues* related to Graham's employment and the termination of his employment with the company."  (Graham's Separation Agreement at 1 (emphasis added)).  It further contains an integration or merger clause entitled "Entire Agreement" which provides that "the Agreement sets forth the entire agreement and understandings between the parties hereto and . . . *supersedes all prior agreements* [] *concerning the subject matter of this Agreement*. . . ."  (*Id.* ¶ 10).  And as set forth above, the subject matter of the Separation Agreement includes *all issues*

15

related to Graham's employment and the termination of his employment with the company, including by its plain terms, Graham's Employment Agreement.  (*Id.* at 1).  In other words, the plain language of Graham's Separation Agreement indicates that the Parties' intended that agreement to govern "all issues related to Graham's employment and [his] termination" and thereby supersede any prior agreements that pertained to issues of Graham's employment.  To be sure, although Graham's Separation Agreement states that "this Agreement [is intended] to govern all issues related to Graham's Employment and the termination of his employment," the Agreement also provides that it does not supersede certain *specific* agreements, including those listed in Paragraph 4 of that agreement.  (Graham's Separation Agreement ¶ 1).  And paragraph 4 of Graham's Separation Agreement provides that "this Agreement does not cancel or otherwise diminish Graham's post-employment obligations under any agreement with Symrise . . . respecting the obligations relating to confidentiality or the use of confidential information, disclosure and ownership of inventions and intellectual property, and No Business Diversion and Non-Solicitation of customers and or employees as outlined in the Symrise Employment Agreement signed by Graham on 12/24/2013."  (*Id.* ¶ 4(a)).  However, while the Separation Agreement outlines specific categories of Graham's Employment Agreement which are still in effect, this enumeration does not include the arbitration clause.  Therefore, the Court cannot conclude that Graham's Separation Agreement, which supersedes all other prior agreements relating to issues of Graham's employment, keeps the arbitration clause in effect.  *See Palladino v. Michael Hegarty Funeral Home, Inc.*, No. A-0946-15T1, 2016 WL 1706051, at *2–3 (N.J. Super. Ct. App. Div. Apr. 29, 2016) (finding that the inclusion of a clause headed "Entire Agreement," incorporated in a subsequent agreement, which stated that the subsequent "[a]greement contains all terms which have been agreed upon by you and us relating to the goods and services listed in the Statement"

16

and provided that "[t]his Agreement replaces all other discussion and agreements, whether oral or written, relating to those goods and services," indicated that the agreement was integrated and superseded any prior agreements).  In addition, Paragraph 1(a) of the Separation Agreement provides that Graham "release[d], waive[d], and discharge[d] [Symrise] from each and every waivable claim, action *or right of any sort*" arising before the execution of the Separation Agreement, including those "relating in any way to his employment relationship [or] *the terms and conditions of that employment relationship*, or the termination of that employment relationship." That provision further indicates that Graham's Separation Agreement was intended to operate as the controlling document with respect to *all issues* related to Graham's employment and the termination of his employment with the company.  (Graham's Separation Agreement ¶ 1(a) (emphasis added)); *Borough of Atl. Highlands v. Eagle Enterprises, Inc.*, 711 A.2d 407, 409–410 (App. Div. 1998) ("In our view, the original construction contract executed on December 29, 1995, which included the arbitration clause in issue, appears to have been knowingly canceled and settled-out by virtue of the Final Agreement, which provided that: '[T]he parties agree that [the] Contract is completed and this Agreement constitutes *full and final satisfaction of all claims for compensation and neither party has any further claims for compensation or damages against the other.*'  We are at a loss as to how we might interpret this unambiguous language to mean anything other than that the original construction contract was to be regarded as history." (emphasis added)). Finally, as stated above, Graham's Separation Agreement contains a New Jersey choice-of-law provision, which, by operation of the merger clause set forth above, displaces the arbitration provision in the Graham Employment Agreement.  *See Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 525–26 (2d Cir. 2011) (reviewing analogous forum selection and arbitration clauses in consecutive contracts and holding that the second contract's forum selection

clause "specifically precludes arbitration . . . and, by operation of the merger clause, displaces the [first contract's] arbitration clause."). Therefore, the Court finds that the arbitration agreement in Graham's Employment Agreement does not apply because it was superseded by Graham's Separation Agreement, which covered the same subject matter and same parties and did not contain any such arbitration provision. *See Wein v. Morris*, 194 N.J. 364, 376 (2008) ("In accordance with the laws of contracts, an arbitration clause may be modified or superseded."); *see also Flexi-Van Corp. v. Orzeck*, No. 88-5015, 1988 WL 188324, at *1–3 (D.N.J. Dec. 29, 1988) ("[A] subsequent agreement whereby [plaintiff-corporation] agreed to pay [its former president] a lump sum of $185,000 in 'full and complete satisfaction of the obligations owned to him under the [former] Agreement'. . . supersede[d] and terminate[d] the original [] agreement and its arbitration provision")).

Graham's remaining arguments to the contrary are unavailing. In Reply, Graham contends that "the Separation Agreement is not fully integrated because it only 'supersedes all prior agreements and understandings concerning the *subject matter* of this Agreement,' and the merger clause specifically carves out the employment obligations in the Graham Agreement—i.e., the very obligations that Symrise seeks to enforce through the instant action." (Reply at 9–10 (citations omitted)). The Court is not convinced. As an initial matter, the Separation Agreement does provide that it "sets forth the entire agreement and understandings between the parties hereto and . . . supersedes all prior agreements [] concerning the *subject matter* of this Agreement . . ." (Graham's Separation Agreement ¶ 10). Accordingly, that statement expressly limits its effect to prior agreements concerning the same subject matter as Graham's Separation Agreement. However, Graham's Separation Agreement also unequivocally provides that "the Company and Graham *intend* the terms and conditions of this Agreement to govern *all issues* related to Graham's

employment," indicating that the subject matter of Graham's Separation Agreement encompasses *all issues* related to Graham's employment, including by its plain terms, Graham's Employment Agreement.  As such, Graham's Separation Agreement indicates that the parties intended that agreement to supersede Graham's prior Employment Agreement which also pertained to the "same subject matter" of Graham's employment.  To be sure, as set forth above, although Graham's Separation Agreement states that "this Agreement [is intended] to govern all issues related to Graham's Employment and the termination of his employment," the Agreement also provides that it does not supersede certain *specific* agreements, including those listed in Paragraph 4 of that agreement including Graham's "obligations relating to confidentiality or the use of confidential information, disclosure and ownership of inventions and intellectual property, and No Business Diversion and Non-Solicitation of customers and or employees as outlined in the Symrise Employment Agreement signed by Graham on 12/24/2013."  (Graham Separation Agreement ¶ 4(a) & 10).  However, as stated, while the Separation Agreement outlines specific categories of Graham's Employment Agreement which are still in effect, this enumeration does not include the arbitration clause.  As such, the Court cannot conclude that Graham's Separation Agreement keeps the arbitration clause in effect.  As such, the Court finds that Graham's arguments are unavailing.[5]

---

[5]    In arguing that Graham did not waive his right to arbitrate, Defendants cite to the Third Circuit's decision in *Field Intel. Inc v. Xylem Dewatering Sols. Inc*, 49 F.4th 351, 358 (3d Cir. 2022).  (Reply at 11).  The Court, however, finds that case distinguishable.  In *Xylem*, two companies, Xylem Dewatering Solutions and Field Intelligence, entered into two contracts.  *Xylem*, 49 F.4th at 353.  The first contained an arbitration provision; the second required the parties to litigate their disputes.  *Id.*  When a conflict arose between the businesses, Field Intelligence filed suit in federal court alleging a breach of their second agreement.  *Id.*  Xylem, unconvinced that Field Intelligence's lawsuit did not implicate the parties' first contract, filed an arbitration demand and moved to stay the federal litigation pending the outcome of the arbitration.  *Id.*  Field Intelligence protested, contending that the parties' second contract superseded the first such that the arbitration provision contained in that earlier agreement was no longer in effect based on a merger provision that read: "[t]his Agreement constitutes the entire agreement between the parties with respect to its subject matter, and supersedes any and all prior or contemporaneous understandings or agreements whether written or oral."  *Id.* at 353 & 358.  The Third Circuit concluded that the second agreement did not supersede the first, because the second contract's merger provision expressly limited its effect to prior agreements concerning the same subject matter, and in that case the two contracts did not pertain to the same subject matter; while the first contract was a non-disclosure agreement, the second contract was a software subscription service agreement.  Here, although Graham's Separation Agreement only "supersedes all prior agreements [] concerning the *subject matter* of this Agreement . . ."

Consequently, the Court finds that Graham's Separation Agreement, which is fully integrated, and does not contain an arbitration provision, supersedes Graham's Employment Agreement such that the arbitration provision is inapplicable to the dispute.  Therefore, Graham's Motion is **DENIED**.

### B.      Defendant Ahmed Nour

Next, in the Moving Brief, Nour also argues that a valid arbitration agreement exists between Plaintiff and Nour.   (Mov. Br. at 2 & 6–7).  Nour argues that "while Nour's [2016 Offer Letter] is not attached to the Amended Complaint, [Plaintiff] admits that Nour 'signed a valid and enforceable agreement with [Plaintiff]' when he began working for [Plaintiff] in 2016."  (Mov. Br. at 6 (quoting Am. Compl. ¶ 6 & 54)).   In support, Nour attaches a Declaration to the Motion and a signed copy of Nour's 2016 Offer Letter with an attached unsigned employment agreement (hereinafter "2016 Employment Agreement") "which, like [Graham's Employment Agreement],

---

(Graham's Separation Agreement ¶ 10), Graham's Separation Agreement also unequivocally provides that "the Company and Graham *intend* the terms and conditions of this Agreement to govern *all issues* related to Graham's employment," indicating that the subject matter of Graham's Separation Agreement encompasses *all issues* related to Graham's employment.  As such, Graham's Separation agreement indicates that the parties intended that agreement to supersede Graham's Employment Agreement (other than certain obligations enumerated in paragraph 4 of Graham's Separation Agreement) which also pertained to issues related to Graham's employment.  Accordingly, Defendants' reliance on *Xylem* is unavailing.

Likewise distinguishable is the court's decision in *Pearson v. Valeant Pharm. Int'l, Inc.*, No. 17-1995, 2017 WL 6508358 (D.N.J. Dec. 20, 2017).  The *Pearson* court analyzed two consecutive contracts, the first of which contained an arbitration clause, while the second did not contain arbitration clause or forum selection clause and was otherwise silent as to where the parties would resolve disputes. *Id.* at *2.  However, the second contract included a merger clause which contained a provision limiting its scope to "the subject matter of this Agreement." *Id.*  The plaintiff sued alleging that defendant breached the second agreement, and the defendant moved to compel arbitration based on the earlier contract's arbitration clause. *Id.* at *3.  The court held that the earlier contract's arbitration clause survived the second contract's merger clause because "[t]he arbitration provision in the 2015 Employment Agreement clearly concern[ed] a distinct subject matter from the [second agreement], which [wa]s silent as to dispute resolution." *Id.* at *6.  This case is distinguishable.  Unlike in *Pearson*, here, both contracts include dispute resolution fora among their subject matter: Graham's Separation Agreement contains a New Jersey choice of law provision, and the Graham Employment Agreement contains an arbitration clause.  *See Applied Energetics, Inc.*, 645 F.3d at 525 (reviewing analogous forum selection and arbitration clauses in consecutive contracts and holding that the second contract's forum selection clause "specifically precludes arbitration... and, by operation of the merger clause, displaces the [first contract's] arbitration clause.").  Accordingly, Graham's Separation Agreement is fully integrated as to the "subject matter" relevant here: dispute resolution and *all issues* related to Graham's employment.

contains the same unequivocal agreement to arbitrate 'any and all employment related claims.'" (*Id.* (citing Ex. C to D.E. No. 40-2 ("Nour Decl.")).  As such, Nour contends that the claims against him must be arbitrated.  Further, to the extent that Plaintiff disputes the existence of a valid agreement to arbitrate with Nour, Nour urges the Court to permit limited discovery on that issue before ruling on his Motion.  (*Id.*).

In Opposition, Plaintiff argues that it has "never agreed, at any time, to arbitrate any claims" with Nour.  (Opp. Br. at 12).  Plaintiff points out that on December 10, 2013, Nour and Plaintiff entered into an Employment Contract (Ex. A ("Nour's 2013 Employment Agreement") to Nour Decl.), for his initial function as "'Business Development Manager Africa & Middle East' within the Division Flavors & Nutrition, Business Unit Sweet," which became effective on January 14, 2013 and did not contain an arbitration provision.  (Opp. Br. at 4; Nour's 2013 Employment Agreement).  Thereafter, according to Plaintiff, on June 14, 2016, Plaintiff sent Nour an offer letter explaining that "this letter confirms our offer of a Symrise Foreign Assignment in the United States."  (Opp. Br. at 5; *See* Ex. B ("2016 Offer Letter") to Nour Decl.).  Nour's 2016 Offer Letter requested that Nour "indicate [his] acceptance of this offer by signing and returning one original copy of this letter, the Conflict of Interest Questionnaire and a copy of the attached [2016] Employment Agreement" (2016 Offer Letter).  Plaintiff points out that two days later, Nour returned an executed copy of the 2016 Offer Letter to Plaintiff, but he never returned a signed copy of the 2016 Employment Agreement mentioned in the 2016 Offer Letter.  (Opp. Br. at 5).  As such, Plaintiff argues that the only contract it has ever executed with Nour is Nour's 2013 Employment Contract, "which contains no arbitration provision, and which requires any amendments to be in writing."  (*Id.* at 5–6 & 12–14).  Additionally, Plaintiff argues that "while Nour attaches a copy of the 2016 [O]ffer [L]etter that he signed on June 16, 2016 . . . he only attaches an unsigned (even

21

by him) version of a new employment agreement." (*Id.* at 12).  Consequently, Plaintiff argues that "[t]he fact that there is no signed new employment agreement that supersedes [Nour's 2013 Employment Contract] is confirmed by the fact that Nour has not provided any signed copy of the purported 2016 [E]mployment [A]greement, and a review of [Plaintiff's] Human Resources records further confirms that while Nour emailed [Plaintiff] a copy of the offer letter he executed on June 16, 2016, contrary to the statement in his declaration, he never executed and returned the [2016 Employment Agreement] he attached as Exhibit C to his declaration."  (*Id.* at 13). Accordingly, Plaintiff maintains that Nour's claims cannot be arbitrated.  In Reply, Nour argues that in June 2016, he received the 2016 Offer Letter and an attached 2016 Employment Agreement. (Reply at 3).   After receiving the aforementioned documents, Nour allegedly signed both documents and began his employment.  (*Id.*).  Nour further contends that "[Plaintiff] concedes that Nour returned the signed [2016] Offer Letter, and Nour has submitted a declaration stating (under penalty of perjury) that he signed the [2016 Employment Agreement] that was attached to the Offer Letter."  (*Id.* at 4).  Moreover, Nour argues that even if the 2016 Employment Agreement was never signed by Plaintiff or Nour, Plaintiff would still be bound to arbitrate because "under New Jersey law, a written arbitration agreement is enforceable, even without signatures, when there is an affirmative expression of agreement with its terms."  (*Id.* (citing *Forsyth v. First Trenton Indem. Co.*, 2010 WL 2195996, at *5 (N.J. Super. Ct. May 28, 2010))).  For the reasons set forth below, the Court concludes that Defendant Nour's Motion to compel arbitration must be denied pending further factual development.

The Third Circuit has provided that it is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard in two instances:  (i) if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate," or (ii) "if the plaintiff has responded

to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776.  Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement."  *Id.* at 774.  "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.*; *see Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-21602, 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).

First, pursuant to step one of the *Guidotti* inquiry, the Court cannot decide Nour's Motion to Compel Arbitration under a Rule 12(b)(6) standard and without discovery because the Amended Complaint lacks the requisite clarity to establish that the parties agreed to arbitrate Plaintiff's claims against Nour.  To start, Plaintiff's Amended Complaint makes no explicit reference to an agreement entered into between Plaintiff and Nour that contains an arbitration provision.  Nor is the 2016 Employment Agreement containing the arbitration provision attached to the Amended Complaint as an exhibit.  (*See generally* Am. Compl.).  Rather, the 2016 Employment Agreement that was allegedly attached to Nour's 2016 Offer Letter and contained the disputed arbitration provision was first introduced to the Court as an attachment, filed for the first time in connection with Defendants' Moving Brief.  (*See* Ex. C to Nour Decl.).  Further, the 2016 Employment Agreement containing the disputed arbitration provision is not integral to or relied upon in the Amended Complaint nor is it incorporated by reference in the Amended Complaint.  Nor do Plaintiff's allegations "turn on the 'terms and conditions' of" the 2016 Employment Agreement "that [ ] contains the subject arbitration provision."  *See George*, 2019 WL 2591163, at *3.  In fact, the Amended Complaint only makes reference to Nour's alleged breach of Nour's 2013 Employment Agreement, which Nour does not argue contained any arbitration provision.  (Am.

Compl. ¶¶ 37–55 & 119–23;[6] *see Hubbard*, 2019 WL 2866067, at *2 (declining to apply Rule 12(b)(6) where the complaint neither referenced the arbitration agreement nor attached it as an exhibit to the complaint and finding that plaintiffs' claim did not stem from the existence of an arbitration agreement))).

Since *Guidotti*, courts within this District routinely deny motions to compel arbitration and allow limited discovery on the narrow issue of whether an arbitration agreement exists where the complaint makes no reference to whether the parties agreed to arbitration and the asserted claims do not arise under the parties' arbitration agreement. *See, e.g.*, *Divoc 91, LLC v. Nat. Essentials, Inc.*, No. 22-0249, 2023 WL 2625275, at *3 (D.N.J. Mar. 24, 2023) (denying motion to compel arbitration and ordering limited discovery because the plaintiff's complaint "ma[de] no reference to whether the parties *agreed* to arbitration") (emphasis in original); *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (denying motion to compel arbitration and ordering limited discovery where the agreement, arbitration provision, and class action waiver were not referenced in the complaint and were raised for the first time in the defendant's motion); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying motion to compel arbitration and ordering limited discovery where the complaint made no reference to arbitration agreement); *Ackies v. Scopely, Inc.*, No. 19-19247, 2020 WL 5757988, at *4 (D.N.J. Sept. 28, 2020) (same); *Aiello on behalf of Landers v. AHC Florham Park LLC*, No. 20-7169, 2021 WL 118931, at *2–3 (D.N.J. Jan. 13, 2021) (same); *Hubbard*, 2019 WL 2866067, at *2, n.1 (same); *Nicasio v. Law Offs. of Faloni & Assocs., LLC*, No. 16-0474, 2016 WL 7105928, at *2 (D.N.J. Dec. 5, 2016) (same).   The Third Circuit has

---

[6]      In Plaintiff's Amended Complaint, Plaintiff alleges that Nour signed a valid and enforceable agreement with Symrise on December 13, 2014.   (Am. Compl. ¶ 119).   Nevertheless, in its opposition brief, Plaintiff confirms that this was a typographical error and confirms that the agreement was signed on December 10, 2013.   (Opp. Br. at 4 n.2).

explained that discovery is necessary under such a scenario because "[w]ithout the benefit of a developed factual record," a court cannot assess whether the authenticity or import of the arbitration agreement at issue "are factual matters beyond reasonable dispute." *Horton*, 688 F. App'x at 157. Because the issue of arbitrability requires this Court to examine documents extraneous to the pleadings that were attached to Defendants' Motion, the Rule 56 standard should apply and limited discovery is appropriate on the narrow issue of whether an arbitration agreement between Plaintiff and Nour exists, before the Court can resolve Nour's Motion under Rule 56. *See, e.g.*, *Guidotti*, 716 F.3d at 776; *Horton*, 688 F. App'x at 157; *Nicasio*, 2016 WL 7105928, at *2. After the necessary discovery is complete, Nour may submit arbitrability arguments in a motion for summary judgment pursuant to Rule 56.

Second, pursuant to step two of the *Guidotti* inquiry, Nour's motion to compel arbitration must be denied because Plaintiff raises facts sufficient to place the agreement to arbitrate in issue. More specifically, as discussed above, though Nour maintains he executed the 2016 Employment Agreement with an arbitration provision, Plaintiff argues that the only contract it has ever executed with Nour is Nour's 2013 Employment Agreement, "which contains no arbitration provision, and which requires any amendments to be in writing." (Opp. Br. at 12–14). Additionally, Plaintiff argues that "while Nour attaches a copy of the 2016 [O]ffer [L]etter that he signed on June 16, 2016 . . . he only attaches an unsigned (even by him) version of [the 2016 Employment Agreement]." (*Id.* at 12). Consequently, Plaintiff argues that "[Nour] never executed and returned the [2016 Employment Agreement] he attached as Exhibit C to his declaration." (*Id.* at 13). Here, Plaintiff's "evidence amounts to more than a 'mere naked assertion' that the arbitration clauses should not be binding on Plaintiff[]." *See Guidotti*, 716 F.3d at 776–80; *Hughes v. Kolaras*, Civ. A. No. 13-0057, 2013 WL 5797735, at *6–7 (D.N.J. Oct. 28, 2013) (finding that plaintiff's denial

of the creation of an agreement containing an arbitration clause, was more than a mere 'naked assertion' that she 'did not intend to be bound by the terms' of the agreement and ordering limited discovery on the issue of arbitrability (emphasis added) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980))); *Noye v. Johnson & Johnson*, Civ. A. No. 1:15–2382, 2016 WL 4678999, at *4 (M.D. Pa. Sept. 7, 2016); *Terra Fin., LLC v. Acrow Corp. of Am.*, No. 16-0075, 2017 WL 499673, at *2 (D.N.J. Feb. 7, 2017).  Therefore, evaluating the motion under Rule 56, rather than 12(b)(6), is proper.  Accordingly, the Court will not evaluate Nour's Motion pursuant to Rule 12(b)(6) and will deny Nour's Motion pending limited discovery on arbitrability.  *See Guidotti*, 716 F.3d at 776.[7]

## IV.    CONCLUSION

For the reasons stated above, Defendant Graham's Motion is **DENIED** and Defendant Nour's Motion is **DENIED** *without prejudice* to his ability to renew his arbitrability arguments in a motion for summary judgment pursuant to Rule 56, pending limited fact discovery on the issue

---

[7]         In opposition, Plaintiff contends that pursuant to *Guidotti*, the right to limited discovery is for the party *opposing* the motion to compel: "the *non-movant* must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." (Opp. Br. at 18 (citing *Guidotti*, 716 F.3d at 774)). It asserts that *Guidotti* does not allow a movant, without any evidence of an enforceable arbitration agreement, to take discovery and thereby delay the litigation.  (*Id.* at 18–19).  The Court is not convinced.  Here, Nour asserts that Plaintiff's claims against him must be arbitrated because he signed a 2016 Employment Agreement that allegedly contains an unequivocal agreement to arbitrate any and all employment related claims and attaches that agreement to his declaration. (Mov. Br. at 6–7).  And in opposition, Plaintiff raises facts sufficient to place the agreement to arbitrate in issue, by contending that the only contract it has ever executed with Nour is Nour's Employment Contract, "which contains no arbitration provision, and which requires any amendments to be in writing."  (Opp. Br. at 12–14).  Under step two of the *Guidotti* inquiry, the Court finds that limited discovery on arbitrability is appropriate because Plaintiff has responded to the motion to compel arbitration by placing the agreement to arbitrate at issue.  *See Guidotti*, 716 F.3d at 776.  And as Nour points out (Reply at 6–7), the *Guidotti* court explicitly stated "*any time* the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted."  *Id.* at 774 n.5.  In addition, as another court in this District has stated in rejecting a similar argument: "While . . . *Guiodtti*[] reflected on the non-movant's opportunity to conduct discovery, the *Guidotti* court later concluded that the parties, plural, should be afforded this right.  The goal of this inquiry is to 'properly evaluate whether there was a meeting of the minds on the agreement to arbitrate.'  While discovery should be restricted in scope, to restrict the authority to conduct discovery to just the non-movant would not further this goal."  *Schmell v. Morgan Stanley & Co.*, No. 17-13080, 2018 WL 2427129, at *5 (D.N.J. May 30, 2018).  The Court finds this reasoning persuasive and thus finds Plaintiff's argument unavailing.

of arbitrability.[8]  Nour may file a renewed motion to compel arbitration under Rule 56 within thirty days of the close of discovery.  Accordingly, at this time, the Court finds that a stay of discovery is no longer appropriate, and discovery must proceed.  Defendants' request to stay the proceedings pending an arbitration award is **DENIED**.  An appropriate Order accompanies this Opinion.

**Dated:** August 6, 2024                                    _s/ Esther Salas_
                                                            **Esther Salas, U.S.D.J.**

---

[8]      Because the Court finds that Nour's motion to compel arbitration must be denied pending further factual development, it need not address Plaintiff's argument regarding whether Nour waived any right to arbitrate any claims in this action.  (Opp. Br. at 14–17).